OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and Appellant's briefs. Defendant-Appellant, Kelly Carter, appeals the decision of the Mahoning County Court of Common Pleas, Juvenile Division, that granted permanent custody of Carter's daughter, Trinity Sox, to the Mahoning County Children Services Board.
 {¶ 2} The performance of Carter's trial counsel seriously undermines our confidence in this result. First, there was an unconscionably lengthy delay between the permanent custody hearing and the magistrate's decision in the matter, yet Carter's counsel did not take the minimal steps necessary to preserve Carter's due process arguments about this delay for appeal. Second, the magistrate's factual conclusions are very questionable, yet trial counsel did not take the minimal steps necessary to preserve this argument for appeal either. After reviewing these issues, we conclude that Carter was not afforded every procedural and substantive protection the law allows. Accordingly, the trial court's decision is reversed and this matter is remanded for further proceedings.
 {¶ 3} Carter gave birth to Trinity on February 7, 2003. Five weeks later, she took the child to the emergency room for nonaccidental injuries. The hospital contacted the Board, who took Trinity from her mother. Trinity was originally placed with her grandmother with Trinity's two siblings. However, the grandmother had a hard time with all three children. On May 22, 2003, the child was placed in foster care and was in the temporary custody of the Board.
 {¶ 4} Carter, who had been intermittently involved with the child welfare system since 1998, was charged with child endangerment due to Trinity's injuries and served seventy-nine days in jail while awaiting bond. Carter later pled guilty to child endangerment in exchange for testifying against Trinity's father. Carter began serving her sentence in m id-August 2004 and was scheduled to be released on November 22, 2004. While she was in jail, Carter did not have visitation with Trinity.
 {¶ 5} Carter's case plan required that she attend parenting classes, anger management classes, seek counseling, and find stable employment and housing. Carter attended the required classes and counseling while both in and out of jail. Prior to her incarceration after her conviction, Carter rented an apartment with her fiancée and was regularly working at Dunkin' Donuts.
 {¶ 6} The Board moved for permanent custody of the child on February 27, 2004. A magistrate heard the issue on September 24, 2004. The magistrate did not issue a decision on the Board's motion for almost a year, on September 14, 2005. In the meantime, Carter had filed motions for custody in an attempt to prove her ability to parent the child.
 {¶ 7} Carter filed timely objections to the magistrate's decision on September 28, 2005. However, Carter's objections dealt with the length of time the magistrate took to make his decision and did not address the correctness of that decision. The trial court overruled Carter's objections in a January 26, 2006, entry and awarded permanent custody of the child to the Board.
 {¶ 8} On appeal, Carter filed her brief on October 11, 2006. The Board did not timely file a responsive brief. It then moved for an extension of time on November 21, 2006, three weeks after its brief was due, promising to file the brief by December 1, 2006. We granted that extension, but the Board failed to file the promised brief by that date. When the Board finally filed its brief, we struck it as untimely. Carter then waived oral argument. Since the Board failed to file a timely responsive brief, we "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App. R. 18(C).
 {¶ 9} Carter's sole assignment of error argues:
 {¶ 10} "The termination of parental rights requires strict scrutiny to assure that such a serious step does not constitute a constitutional violation of parental rights.
 {¶ 11} Carter's "assignment of error" is more a statement of principle than an allegation that the trial court committed some sort of error. However, Carter's basic argument is that the Board did not prove by clear and convincing evidence that it was entitled to permanent custody.
 {¶ 12} A parent's right to raise his or her children is an essential and basic civil right. Stanley v. Illinois (1972), 405 U.S. 645, 651. Parents have a "fundamental liberty interest" in the care, custody, and management of the child. Santoskyv. Kramer (1982), 455 U.S. 745, 753. It is "cardinal" that the custody, care and nurture of the child reside, first, in the parents. H.L. v. Matheson (1981), 450 U.S. 398, 410. Permanent termination of parental rights is the family law equivalent of the death penalty in a criminal case, so parents involved in such an action must be afforded every procedural and substantive protection the law allows. In re Hayes (1997), 79 Ohio St.3d 46, 48.
 {¶ 13} We cannot help in this case but conclude that Carter was not afforded every procedural and substantive protection the law allows.
 {¶ 14} Because of the importance of cases involving the termination of parental rights, the due process and equal protection clauses of the United States and Ohio Constitutions guarantee that indigent parents be provided with counsel and a transcript at public expense for appeals as of right. State ex rel. Heller v. Miller^ 980), 61 Ohio St.2d 6, paragraph two of the syllabus. Accordingly, the General Assembly has provided parents involved in permanent custody proceedings with the right to counsel, which will be appointed by the court if the parent is indigent. R.C. 2151.352; see also Juv. R. 4. The right to counsel includes the right to the effective assistance of counsel. In reWingo, 143 Ohio App.3d 652, 666, 2001-Ohio-2477.
 {¶ 15} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98, 100. When reviewing whether counsel's performance was ineffective, courts must refrain from second-guessing strategic decisions of trial counsel. State v.Sallie, 81 Ohio St.3d 673, 674, 1998-Ohio-0343. Ineffectiveness is demonstrated by showing counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.State v. Hamblin (1988), 37 Ohio St.3d 153, 156. To establish prejudice, an appellant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland at 694. A reasonable probability must be a probability sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989), 42 Ohio St. 3d 136, paragraph three of the syllabus. The appellant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
 {¶ 16} In this case, counsel's representation of Carter was ineffective in two ways. The first major problem with counsel's performance is the manner in which trial counsel dealt with the unconscionably lengthy delay in the resolution of the permanent custody proceedings. R.C. 2151.414 provides that a permanent custody proceeding should occur within certain time frames. For instance, a hearing on the motion should be scheduled "not later than one hundred twenty days after the agency files the motion for permanent custody" and the motion should be disposed of "not later than two hundred days after the agency files the motion." R.C. 2151.414(A)(2). However, these time limits do "not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." Id.
 {¶ 17} The Ohio Supreme Court has stated that similar time limits are directory, not mandatory, and that they do not provide a basis for attacking the validity of the trial court's judgment. See In reDavis, 84 Ohio St.3d 520, 522-523, 1999-Ohio-0419. However, these time limits are the legislature's expression of what the legislature believes is a reasonable time within which to act. Id. According toDavis, a litigant must seek a writ of procedendo against the juvenile court if it does not comply with these time limits. Id. at 523-524. If a party does not seek such a writ, then they are estopped from complaining on appeal that delay by the juvenile court violated that party's due process rights. Id. at 524.
 {¶ 18} Here, counsel tried forcing a resolution of this case through filing motions with the trial court. However, counsel did not ever seek a writ of procedendo and, therefore, failed to preserve these issues for appellate review. Counsel's performance was deficient because counsel did not take the minimal actions necessary to preserve these issues for appellate review. Counsel's failure to preserve this issue left Carter in the same position as if she had no counsel at all.
 {¶ 19} We conclude that there is a reasonable probability that counsel's deficient performance, if not addressed, would affect the outcome of this case. For reasons which will be discussed below, there are substantial reasons to question many of the factual findings of both the magistrate and the trial court, but many of these reasons would have to be ignored if we engaged in a plain error review. If we failed to recognize these issues, our confidence in the outcome of the case would be undermined.
 {¶ 20} Furthermore, Carter would have had a strong due process argument regarding the delay in the proceedings if counsel had taken the correct steps to preserve this error. The hearing did not take place before the magistrate until seven months after the motion was filed, almost twice the time limit referenced in R.C. 2151.414(A)(2). The magistrate did not issue his decision in the case until almost one year after the case was heard. Finally, the trial court did not dispose of the motion until twenty-three months after it was filed, which is substantially more than the two hundred day statutory time limit.
 {¶ 21} At least one other Ohio court has addressed a similar delay. InIn re Omosun Children (1995), 106 Ohio App.3d 813, a statute stated the trial court should render its decision within seven days after a hearing but the court did not do so until twenty-eight months after the hearing. The Eleventh District found that this delay violated the parent's due process rights. This decision was eventually overturned inDavis, but only because the party did not preserve the issue for appeal by seeking a writ of procedendo, not because the Ohio Supreme Court thought that the delay was reasonable. See Davis at 524 (Lundberg Stratton, J., concurring) (Justice writes separately "to express my outrage at the extraordinary delay in this case" of seventeen months, calling the delay "inexcusable."). The delay in this case was just as inexcusable as the delays in Davis and Omosun. Courts must deal with these cases in a more expeditious manner and attorneys representing indigent clients in these types of cases must do a better job of preserving these types of issues for appeal. These cases are the civil equivalent of the death penalty and must be treated so accordingly.
 {¶ 22} These delays were compounded by delays in processing this appeal. App. R. 11.2(C)(2) states that the preparation of the record, including the transcripts and exhibits, in cases involving permanent custody proceedings "shall be given priority over the preparation and transmission of the records in all cases other than those" involving abortion without parental consent. This standard was not met in this case. The transcript of original papers was filed with this court only three days after the notice of appeal was filed, but the transcripts of the proceedings, which were not extensive, were not filed with this court until five months later. The court reporter is under an obligation to give the preparation of these transcripts the priority they deserve.
 {¶ 23} This appeal was further delayed by the Board's failure to timely file a brief in this case. Carter's brief was filed on October 11, 2006. The Board had twenty days to file a responsive brief, but did not file anything within this time. App. R. 18(A). The Board was only entitled to an extension of time for filing its brief "in the most unusual circumstances and only for the most compelling reasons in the interest of justice." App. R. 11.2(B). The Board contacted this court to express its desire to file a brief and promised that a brief would be filed, at the latest, by December 1, 2006. This extension was granted, but the Board did not file a brief within the promised time, which was over a month after its brief was due.
 {¶ 24} Accordingly, a case, which, by statute, should be dealt with quickly by the trial court and, by rule, should be addressed quickly by this court, has languished on the dockets of both the juvenile court and this court for far too long. If counsel had taken the minimal steps necessary to preserve this issue for review, we would reverse the trial court's judgment on this basis alone since Carter must be afforded every procedural and substantive protection the law allows. Hayes at 48.
 {¶ 25} The second manner in which counsel was ineffective was by not filing specific objections to the magistrate's factual findings. Instead, counsel only filed general procedural objections.
 {¶ 26} Juv. R. 40(D)(3)(b)(ii) requires that objections to a magistrate's decision "be specific and state with particularity all grounds for objection." "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv. R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv. R. 40(D)(3)(b)." Juv. R. 40(D)(3)(b)(iv). The doctrine of plain error is "not favored" in civil cases and is "applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-0401, syllabus. "The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." Id. at 122.
 {¶ 27} Trial counsel's failure to file specific objections to the substance of the magistrate's decision forces Carter to be subject to a plain error review, a hard standard of review to overcome, rather than to a more lenient standard of review.
 {¶ 28} Counsel's performance in this regard was clearly deficient. A trial counsel who is representing a parent in a permanent custody proceeding should, at the very least, make sure to file specific objections to the magistrate's decision, especially if there is reason to disagree with the magistrate's findings of fact and conclusions of law. Once again, the failure to take this minimal step leaves the parent as if she did not have any counsel at all; the failure to file specific objections is treated the same as the failure to file any objections.
 {¶ 29} Counsel's performance in this regard also prejudiced Carter since there are significant reasons to question the facts underlying the court's judgment. In Ohio, a person's parental rights are terminated when a trial court grants permanent custody of a child to a public children services agency or a private child placing agency. R.C. 2151.011(A)(30). Courts are reluctant to grant permanent custody because of the importance of maintaining the family unit and protecting the essential parental rights associated with that unit. In reCunningham (1979), 59 Ohio St.2d 100, 104-105. This court has previously called permanent custody "an extreme measure," which should only be taken as "a last resort." In re Hardy, 7th Dist. No. 04 MA 11,2004-Ohio-4542, at ¶ 22.
 {¶ 30} In order to protect parents faced with the termination of their parental rights, R.C. 2151.414(B) (1 ) imposes a clear and convincing evidentiary standard on the agency seeking permanent custody. Clear and convincing evidence is more than a mere preponderance of the evidence, as is the applicable standard in most civil cases, but is not as high a burden as beyond a reasonable doubt, the standard applicable to criminal cases. State v. Schiebel (1990), 55 Ohio St.3d 71, 74. Clear and convincing evidence is that amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. Id.
 {¶ 31} When reviewing a decision which must be reached by clear and convincing evidence, this court must examine the record to determine whether the trier of facts had sufficient evidence before it to meet the requisite degree of proof. Id. Judgments supported by some competent, credible evidence going to all the essential elements of the case should not be reversed by a reviewing court. Id. at 74-75.
 {¶ 32} An agency seeking permanent custody must prove the following two things: 1 ) permanent custody is in the best interests of the child and 2) the child is orphaned or abandoned, the child has been in the temporary custody of agency for twelve or more months of a consecutive twenty-two month period, or if none of these apply, the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a)-(d).
 {¶ 33} In this case, the magistrate found that permanent custody was in the child's best interests, that the child had been abandoned because the mother had failed to maintain contact with the child for more than ninety days, and that the child had been in the temporary custody of the Board for more than twelve of the previous twenty-two months. The trial court included an additional conclusion, finding that the child could not be placed with either parent within a reasonable time. However, there is not clear and convincing evidence supporting many of these findings.
 {¶ 34} Even though both the magistrate and trial court concluded that Carter had abandoned her child, the record does not support this conclusion. "Abandonment" is defined as follows:
 {¶ 35} "A child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).
 {¶ 36} The evidence in this case shows that Carter was in jail for more than ninety days (from mid-August 2004 until November 22, 2004) and that she did not have visitation with the child during that period of time. However, the record is silent regarding whether Carter maintained contact with the child for that period of time. Notably, neither the case worker assigned to this case nor the guardian ad litem recommended permanent custody due to abandonment. The Board has the burden of proof on this issue and failed to produce sufficient evidence to meet its burden on this issue. Accordingly, the finding of abandonment is against the manifest weight of the evidence.
 {¶ 37} The evidence also contradicts the trial court's conclusion that the child could not be placed with Carter within a reasonable period of time. R.C. 2151.414(E) describes circumstances under which a court must enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Many of those factors clearly do not apply to this case, but a couple of them do need to be addressed.
 {¶ 38} R.C. 2151.414(E)(5) states that a child cannot be placed with either parent within a reasonable time if "[t]he parent is incarcerated for an offense committed against the child or a sibling of the child." At the time of the hearing, this was the case. However, this was no longer the case when both the magistrate and the trial court disposed of this matter. Accordingly, this factor does not apply to the facts of this case.
 {¶ 39} R.C. 2151.414(E)(6) states that a child cannot be placed with either parent within a reasonable time if "[t]he parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 * * * and the child or a sibling of the child was a victim of the offense * * * and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child." In this case, it appears that Carter was convicted of child endangerment under R.C. 2919.22(A). However, there is no evidence showing that Carter poses an ongoing danger to the child. Accordingly, this factor also does not apply to this case.
 {¶ 40} The facts of this case show that Carter was diligently attempting to comply with the case plan. The case plan required Carter to attend parenting classes, have a stable income, and a safe residence. Carter was also required to participate in counseling to increase intra-familial communication and learn conflict resolution techniques, anger management counseling, and cooperate in the pending legal charges.
 {¶ 41} Carter cooperated in legal proceedings by pleading guilty and agreeing to testify against the father. When Carter pled, the prosecutor agreed to recommend community control, but the trial court sentenced Carter to a jail sentence. The case worker assigned to the case testified that Carter had attended programs while in jail in addition to counseling, stress and anger management classes, and parenting classes. Before being put into jail after her plea, Carter had rented an apartment with her fiancée and found stable employment with Dunkin' Donuts. The case worker's only concerns were with regard to Carter's income and housing, which would be addressed after Carter was released from jail less than two months after the hearing before the magistrate or, put another way, ten months before the magistrate issued his decision.
 {¶ 42} Accordingly, the reason Carter could not be reunited with her child within a reasonable time was because she was in jail. She was only in jail because a judge disregarded the prosecutor's recommendation of community control sanctions in exchange for a guilty plea. Carter pled guilty in order to fulfill a term of her case plan. In other words, Carter's efforts to comply with her case plan and reunite with her child eventually led to her incarceration, which was the reason why the court found she could not be reunited with her child. Given the short period of time until Carter was released, the diligent efforts Carter had made to comply with the case plan, and the fact that Carter had long been released from jail by the time the case was disposed of, the evidence does not support the trial court's conclusion that the child could not be placed with Carter within a reasonable time.
 {¶ 43} We do find that the evidence fully supports the trial court's conclusion that the child had been in the temporary custody of the Board for more than twelve of the previous twenty-two months by the time of the permanent custody hearing. The child was born on February 7, 2003, and entered the Board's temporary custody on May 22, 2003. The hearing was held before the magistrate on September 24, 2004 more than one year after the child was placed into the Board's temporary custody.
 {¶ 44} However, this alone is an insufficient reason to award permanent custody to the Board. R.C. 2151.414(B)(1) requires both proof that the child has been in the temporary custody of the Board for more than twelve of the previous twenty-two months and that permanent custody is in the child's best interests.
 {¶ 45} "In determining the best interest of a child at a [permanent custody] hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 46} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 47} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 48} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 49} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 50} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 51} The factors R.C. 2151.414(E)(7) to (11) provide the following factors:
 {¶ 52} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 53} "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 54} "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 55} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 56} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 57} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 58} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 59} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 60} "(10) The parent has abandoned the child.
 {¶ 61} "(11 ) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 62} In this case, the trial court stated that it considered the statutory factors, but neither conducted a detailed analysis of any of those factors nor stated which factors were most important to its decision. When these factors are analyzed, they show that permanent custody is not clearly and convincingly in the child's best interests.
 {¶ 63} The child in this case is very young and is unable to express her own wishes, but has shown a bond with her family members and handled the visits with her mother "quite well." The guardian ad litem expressed a wish to reunite the family, but felt that was impossible at the time of the hearing due to Carter's incarceration. The child had been in the Board's temporary custody for most of her life at the time of the hearing, but she was also very young and her mother had made diligent efforts to comply with the case plan for reunification. The child needed secure placement, but it was not clear at the time whether such a placement could not be with Carter within a reasonable time. Carter had not been convicted of any of the offenses listed in R.C. 2151.414(E)(7). She had not withheld medical treatment from the child and, in fact, had been the person who first brought the child to the hospital, which led to the current proceedings. There is no evidence in the record that Carter had placed the child at substantial risk of harm two or more times due to alcohol or drug abuse; she did not abandon the child; and she had not had her parental rights previously determined.
 {¶ 64} Many of these factors show that permanent custody may not be in the child's best interests at this time. Indeed, the only evidence which supports the trial court's judgment is related to Carter's incarceration, a situation which occurred because of her willingness to comply with the case plan for reunification and would end relatively soon after the hearing.
 {¶ 65} Permanent custody is the civil law equivalent of the death penalty and should not be granted lightly. We cannot conclude that the facts in this case are sufficient to support the trial court's conclusion that permanent custody is in the child's best interests at this point. Trial counsel's failure to bring these issues to the trial court's attention in the form of specific objections to the magistrate's decision constitutes the ineffective assistance of counsel.
 {¶ 66} We are seriously disturbed by what occurred in this case. This case, involving the fundamental rights of both Carter and her child, was languishing on the trial court's docket for an unconscionable period of time. Carter's court-appointed counsel completely failed to take the minimal steps necessary to allow Carter to raise the due process concerns this delay caused. Furthermore, when the magistrate issued a decision containing many questionable findings of fact, trial counsel failed to take the elementary step of challenging those factual findings via timely objections, leading the trial court to adopt those factual findings. We cannot help but conclude that Carter was not afforded every procedural and substantive protection the law allows.
 {¶ 67} Attorneys involved in permanent custody proceedings must be held to a higher level of scrutiny, much like attorneys in death penalty cases. Deficiencies which may be overlooked in other cases are much more important in cases like this. Furthermore, courts must deal with these cases in an expeditious and conscientious manner. Parents and children should not be held in a legal limbo waiting months for a judge or magistrate to make up his or her mind.
 {¶ 68} Of course, Carter may still eventually have her right to parent this child terminated. We have no idea how the situation could have changed since September 2004. However, she must be afforded due process and the result of such a proceeding should not be in doubt due to the efforts (or lack thereof) of her counsel.
 {¶ 69} Carter's sole assignment of error is meritorious. Accordingly, the judgment of the trial court awarding permanent custody to the Board is reversed and this cause is remanded for further proceedings.
Donofrio, P.J., concurs in judgment only.
Vukovich, J., concurs in judgment only.