OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, Shukiriyyah Abdul-Salaam, acting in her capacity as Guardian ad Litem of Trinity Sox, appeals the decision of the Mahoning County Court of Common Pleas, Juvenile Division that granted custody of Trinity Sox, to her mother, Kelly Carter, and denied the Board's motion for permanent custody of the child. On appeal, Appellant argues that the trial court erred when it determined that permanent custody was not in the child's best interests. However, the trial court's decision is supported by competent, credible evidence. Carter complied with all the Board's requests and the only factor strongly weighing in favor of permanent custody is the amount of time that the child has lived with her foster family. Although the trial court could have decided this case differently, it is not our place to substitute our judgment for that of the trial court. Accordingly, its decision is affirmed.
 Facts {¶ 2} Carter gave birth to Trinity on February 7, 2003. Five weeks later, she took the child to the emergency room for non-accidental injuries. The hospital contacted the Board, who took Trinity from her mother. Trinity was originally placed with her grandmother with Trinity's two siblings. However, the grandmother had a hard time with all three children. On May 22, 2003, the child was placed in foster care and was in the temporary custody of the Board.
 {¶ 3} Carter, who had been intermittently involved with the child welfare system since 1998, was charged with child endangerment due to Trinity's injuries and served seventy-nine days in jail while awaiting bond. Carter later pled guilty to child endangerment in exchange for testifying against Trinity's father. Carter began serving her sentence in mid-August 2004 and was scheduled to be released on November 22, 2004. While she was in jail, Carter did not have visitation with Trinity.
 {¶ 4} Carter's case plan required that she attend parenting classes, anger management classes, seek counseling, and find stable employment and housing. Carter attended the required classes and counseling while both in and out of jail. Prior to her incarceration after her conviction, Carter rented an apartment with her fiancée and was regularly working at Dunkin' Donuts. *Page 2 
 {¶ 5} The Board moved for permanent custody of the child on February 27, 2004. A magistrate heard the issue on September 24, 2004. The magistrate did not issue a decision on the Board's motion for almost a year, on September 14, 2005. In the meantime, Carter had filed motions for custody in an attempt to prove her ability to parent the child.
 {¶ 6} The trial court eventually granted the Board's motion for permanent custody and Carter appealed that decision to this court. In a decision styled In re Sox, 7th Dist. No. 06 MA 35, 2006-Ohio-7116, we reversed the trial court's decision and remanded the case for further proceedings.
 {¶ 7} The trial court held a new permanent custody hearing on August 6, 2007. In a September 11, 2007, judgment entry arising from that hearing, the trial court concluded that it would be in the child's best interests to be returned to her mother and denied the Board's motion for permanent custody.
 Permanent Custody {¶ 8} Appellant argues the following assignment of error on appeal:
 {¶ 9} "The trial court erred in failing to consider the factors set forth in R.C. 2151.414(D) in making its determination as to the best interests of the child."
 {¶ 10} In this case, Appellant challenges the trial court's conclusion that permanent custody was not in the child's best interests and that the child be returned to her mother. In order to protect parents faced with the termination of their parental rights, R.C. 2151.414(B)(1) imposes a clear and convincing evidentiary standard on the Board seeking permanent custody. Clear and convincing evidence is more than a mere preponderance of the evidence, as is the applicable standard in most civil cases, but is not as high a burden as beyond a reasonable doubt, the standard applicable to criminal cases. State v. Schiebel (1990),55 Ohio St.3d 71, 74. Clear and convincing evidence is that amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. Id.
 {¶ 11} When reviewing a decision which must be reached by clear and convincing evidence, we must examine the record to determine whether the trier of facts had sufficient evidence before it to meet the requisite degree of proof. Id. *Page 3 
Judgments supported by some competent, credible evidence going to all the essential elements of the case should not be reversed by a reviewing court. Id. at 74-75.
 {¶ 12} An agency seeking permanent custody must prove the following two things: 1) permanent custody is in the best interests of the child and 2) the child is orphaned or abandoned, the child has been in the temporary custody of agency for twelve or more months of a consecutive twenty-two month period, or if none of these apply, the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a)-(d).
 {¶ 13} In this case, the child had been in the Board's custody from the time she was seven weeks old until she was around four and a half years old. Thus, she has clearly been in the temporary custody of the Board for twelve or more months of a consecutive twenty-two month period. Nevertheless, the trial court concluded that the Board had failed to clearly and convincingly prove that permanent custody was in the child's best interests.
 {¶ 14} R.C. 2151.414(D) provides a non-exhaustive list of the factors a trial court should consider when determining whether permanent custody is in a child's best interests. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 28.
 {¶ 15} "In determining the best interest of a child at a [permanent custody] hearing * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and *Page 4 
whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 21} R.C. 2151.414(E)(7) to (11) provides the following factors:
 {¶ 22} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 23} "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 24} "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 25} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 26} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 27} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 28} "(8) The parent has repeatedly withheld medical treatment or food from *Page 5 
the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 29} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 30} "(10) The parent has abandoned the child.
 {¶ 31} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 32} In this case, the Board did not introduce any evidence which tends to show that any of the factors in R.C. 2151.414(E)(7) to (11) apply to this case. In contrast, it firmly established that the custodial history of the child weighed in favor of granting permanent custody to the Board. The child had been in the Board's custody for over four years and spent that time with the same foster family. However, much of the evidence on the remaining factors is mixed.
 {¶ 33} In regard to the first factor, there was testimony showing that the child interacted well with both Carter and her new husband. However, it does not appear from the record that the child has had much interaction with her siblings. Furthermore, her bond with her foster family is much more than with her natural family, since she has lived with the foster family since she was seven weeks old. Finally, there was testimony that the child would wet her pants after visitation with Carter, although no witness could conclusively verify that this problem was due to the visits.
 {¶ 34} The child, through her GAL, stated that she would prefer for the court to grant permanent custody. The GAL's testimony showed that the main reason for this conclusion was simply the time involved in this proceeding. At one time, the GAL *Page 6 
stated that she recommended that the child be allowed to be with her siblings, but changed that recommendation once it appeared that the matter would not be resolved quickly.
 {¶ 35} Finally, the need for a permanent placement in this case is great. The Board has had temporary custody over this child for over four years and there are strong reasons in favor of resolving this case. However, the record supports the trial court's conclusion that this can be achieved without granting permanent custody to the Board, namely by granting custody of the child back to Carter. The record shows that Carter complied with the Board's recommendations about obtaining secure housing and employment, attending counseling and parenting classes, and cooperating with the criminal case that arose out of the initial injuries to the child. During the long period that the child was in the Board's temporary custody, the mother was present for the vast majority of the scheduled visits, only missing a few due to illness.
 {¶ 36} Appellants take issue with this conclusion, arguing that a trial court should not consider whether custody with a parent is a legally secure permanent placement under the statute. But this argument is contrary to both Supreme Court precedent and the statutory scheme. First, in In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 62, the Ohio Supreme Court specifically considered whether permanent placement with a parent was a possibility when reviewing the trial court's decision regarding the best interests of the child. Second, the only entity which can move for permanent custody of a child is an agency, see R.C. 2121.413, so the only way a court can ensure that a child is legally secured in permanent placement is either to grant custody to the parent or to the agency. Thus, it was completely appropriate for the court to consider whether it was possible to legally secure placement of the child without a grant of permanent custody to the Board when deciding what was in the child's best interests.
 {¶ 37} When these factors are all taken together, we must conclude that the trial court's decision is supported by competent, credible evidence. The child has been in the temporary custody of the Board since she was an infant and has spent over four years with her foster parents. However, Carter has made diligent efforts to *Page 7 
demonstrate her parenting abilities. She interacts appropriately with the child, has a stable home environment, and has complied with the Board's recommendations regarding counseling, parenting classes, etc.
 {¶ 38} Fundamentally, the only real reason for not reuniting the child with Carter is the amount of time the child has been with her foster parents. Thus, the trial court was faced with the difficult decision of whether it was in the best interests of the child for her to have the Board be given permanent custody so she could remain with her foster parents or be returned to her natural mother. Although the case could have clearly come out differently, the trial court reasonably concluded, based on the evidence before it, that the Board had failed to clearly and convincing prove that permanent custody was in the child's best interests and that it should place the child with Carter.
 {¶ 39} For these reasons, Appellant's arguments are without merit and the judgment of the trial court is affirmed.
 Donofrio, J., concurs. Vukovich, J., concurs. *Page 1